UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **OPTIMUM LABORATORY SERVICES, LLC**, an Oklahoma Limited liability company, | § § § § § § § | |
| Plaintiff, | § § | **EP-20-CV-00007-FM** |
| v. | § § | |
| **SIMMONS BANK, THE FARMERS & MERCHANTS BANK, MARATHON BANK, INCREDIBLE BANK, UNITED HEALTHCARE OF TEXAS, INC., BLUECROSS BLUESHIELD OF TEXAS, AETNA, HUMANA INC.,** and **CIGNA,** | § § § § § § § § § | |
| Garnishees, | § § | |
| v. | § § | |
| **EAST EL PASO PHYSICIANS' MEDICAL CENTER LLC, d/b/a FOUNDATION SURGICAL HOSPITAL OF EL PASO,** | § § § § § | |
| Defendant. | § § | |
| **VIVA CAPITAL FUNDING, LLC,** | § § § | |
| Plaintiff-in-Intervention, | § § | |
| v. | § § | |
| **OPTIMUM LABORATORY SERVICES, LLC,** | § § § § | |
| Defendant-in-Intervention. | § § | |

1

**ORDER DENYING INTERVENTION**

Before the court are "Motion (Second) for Leave to Intervene in Opposition to Plaintiff's Application for Writs of Garnishment and Request for Hearing" [ECF No. 58], filed May 8, 2023, by Viva Capital Funding, LLC ("Intervenor") and "Optimum Laboratory Services, LLC's Response and Objection to Viva Capital Funding, LLC's Motion (Second) For Leave to Intervene in Opposition to Plaintiff's Application for Writs of Garnishment" [ECF No. 59], filed June 2, 2023 at 4:45 PM Central time.[1] Intervenor requests to intervene in this matter pursuant to Federal Rule of Civil Procedure 24(a)(2).[2] For the following reasons, the court denies the request to intervene.

**I.    BACKGROUND**

This case begins on January 20, 2020, when Optimum Laboratory Services, LLC ("Plaintiff") filed a complaint against East El Paso Physicians' Medical Center LLC ("Defendant") seeking confirmation of a $1,546,563 arbitration award.[3] Defendant's summons was returned executed on February 20, 2020.[4] The Defendant did not file an answer or 12(b) motion and Plaintiff

---

[1] "Optimum Laboratory Services, LLC's Response and Objection to Viva Capital Funding, LLC's Motion (Second) For Leave to Intervene in Opposition to Plaintiff's Application for Writs of Garnishment" 1, ECF No. 59, filed June 2, 2023. The court first notes that Plaintiff's response is procedurally deficient because local rule CV-7(d) states, "[a] response to other motions shall be filed not later than 14 days after the filing of the motion." The 14-day deadline to respond to Intervenor's motion was May 22, 2023. Beyond the procedural deficiency, the court's review of Plaintiff's response revealed only frivolous and meritless arguments.

[2] "Motion (Second) for Leave to Intervene in Opposition to Plaintiff's Application for Writs of Garnishment and Request for Hearing" 1, ECF No. 58, filed May 8, 2023.

[3] "Verified Petition and Application for Order to Confirm Arbitration Award" 1, ECF No. 1, filed Jan. 10, 2020.

[4] "Summons in a Civil Action" 1, ECF No. 4, filed Feb. 20, 2020.

2

subsequently moved for a default judgment on March 13, 2020.[5] Default judgment was granted on March 18, 2020, and the Final Judgment followed.[6]

The Plaintiff moved for its first writ of execution and garnishment against Defendant and Garnishees on April 24, 2020, and May 4, 2020, respectively.[7] These motions were granted on May 8, 2020.[8] Plaintiff then filed a new writ of garnishment motion on November 1, 2021.[9] This motion was granted on December 1, 2021.[10] Plaintiff then moved for a third set of writs of execution and garnishment on March 1, 2022 and April 8, 2022.[11] This third-set of motions was subsequently granted.[12] Yet, Plaintiff is back with a fourth set of motions for a writ of execution and writ of garnishment. The original pair was filed on March 10, 2023; Intervenor then filed an intervention motion on March 14, 2023. Plaintiff filed a notice to withdraw its March 10 motions

---

[5] "Application for Entry of Default and Default Judgment" 1, ECF No. 5, filed March 13, 2020.

[6] "Order Granting Motion for Default Judgment" 3, ECF No. 8, filed March 18, 2020; "Final Judgment" 1, ECF No. 9, filed March 18, 2020.

[7] "Application for Issuance of Writ of Execution" 1, ECF No. 11, filed April 24, 2020; "Application for Writs of Garnishment After Judgment" 1, ECF No. 12, filed May 4, 2020.

[8] "Order Granting Application for Issuance of Writ of Execution and Writ of Garnishment" 1, ECF No. 13, filed May 8, 2020.

[9] "Application for Writs of Garnishment After Judgment" 1, ECF No. 16, filed Nov. 1, 2021.

[10] "Order Granting Application for Writs of Garnishment" 1, ECF No. 17, filed Dec. 1, 2021.

[11] "Application for Issuance of Writ of Execution" 1, ECF No. 31, filed March 1, 2022; "Unopposed Motion for Entry of Judgment of Garnishment" 1, ECF No. 35, filed April 8, 2022.

[12] "Order Granting Application for Writ of Execution" 1, ECF No. 34, filed April 6, 2022; "Order Granting Motion for Entry of Agreed Judgment of Garnishment" 1, ECF No. 36, filed April 11, 2022.

on March 24, 2023.[13] Just seven days later, Plaintiff filed the same motions for a writ of execution and garnishment but added Intervenor as a garnishee.[14]

Intervenor filed its second motion for leave to intervene on May 8, 2023.[15] A timeline of facts—as asserted by the Intervenor—is as follows: on May 8, 2017, Intervenor entered into a factoring agreement with Defendant.[16] This agreement gave Intervenor a security interest in certain accounts receivable of the Defendant in exchange for cash.[17] These accounts included Defendant's deposit accounts with any bank or financial institution and its present and future accounts including heath care insurance receivables.[18] Intervenor perfected its security interest by filling a UCC-1 financing statement the next day, May 9, 2017 and later filed a UCC-3.[19] Intervenor states that their legal rights in the Garnishees' bank and healthcare accounts, as to Defendant, are superior to that of Plaintiff's judgment.[20] Intervenor further states that Plaintiff is aware of its priority status in these accounts.[21] Defendant closed its doors earlier in 2023 and stopped making payments on

---

[13] "Withdrawal of Applications for Writs of Garnishment After Judgment and Applications for Issuance of Writ of Execution" 1, ECF No. 55, filed March 24, 2023.

[14] "Application for Issuance of Writ of Execution" 1, ECF No. 56, filed March 31, 2023; "Application for Writs of Garnishment After Judgment" 1, ECF No. 57, filed March 31, 2023.

[15] "Motion (Second) for Leave to Intervene in Opposition to Plaintiff's Application for Writs of Garnishment and Request for Hearing" ("Mot.") 1, ECF No. 58, filed May 8, 2023.

[16] *Id.* at 2.

[17] *Id.*

[18] *Id.* 2–3.

[19] *Id.*

[20] *Id.*

[21] *Id.*

debts.[22] Intervenor seeks intervention in order to obtain a declaratory judgment asserting that it has priority rights to these accounts and to deny Plaintiff's writ of garnishment.[23]

## II.     LEGAL STANDARD

Intervenor seeks intervention pursuant to Federal Rule of Civil Procedure 24(a)(2). Under FRCP 24(a)(2) the court must permit anyone to intervene who, "claims an interest relating to the property or transaction that is subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[24] When determining if a party has the right to intervene under FRCP 24(a)(2), the Fifth Circuit uses the following four factor test: (1) the motion is timely; (2) the potential intervenor asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene; (3) the disposition of that case may impair or impede the potential intervenor's ability to protect her interest; and (4) the existing parties do not adequately represent the potential intervenor's interest.[25] "Federal courts should allow intervention where no one would be hurt and the greater justice could be attained."[26]

## III.    DISCUSSION

Numbers two and four of the intervention factors can be dispensed of quickly. The second factor requires the intervenor to have an "interest" that is the subject of the action. The Fifth Circuit

---

[22] *Id.* at 4.

[23] *Id.* at 13.

[24] FED. R. CIV. P. 24(a)(2).

[25] *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001).

[26] *Id.*

5

has interpreted "interest" to mean, "direct, substantial, legally protectable interest in the proceedings."[27] Property interests are the quintessential rights Rule 24(a) is designed to protect.[28] The Intervenor's interest is a quintessential property right. The current dispute revolves around the accounts receivable and health insurance funds that Plaintiff wants a garnishment on, and which Intervenor has legal rights to based on their contract with Defendant. Therefore, the second factor is clearly met.

Intervenor also easily meets factor four because the Defendant does not adequately represent Intervenor's rights to the property. An intervenor meets this factor if it shows that the existing parties *may* be inadequate.[29] The burden is minimal on the intervenor and the bar is easily cleared because of the nonfeasance of the Defendant.[30] The Defendant did not defend itself in this case and the Plaintiff was granted default judgment. Since then, the Defendant has never resisted any of the writ of garnishment motions Plaintiff has filed. Therefore, Defendant is not adequately representing the Intervenor's interest in the property.

The primary issues with Intervenor's motion are: the timeliness of the motion, and whether its interest would actually be impaired by a new writ of garnishment. The court addresses each in turn.

---

[27] *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022).

[28] *Id.*

[29] *Id.* at 308

[30] *Id.*

### A. The Intervenor's Motion is Not Timely

Timeliness is not a tool of retribution to punish tardy would-be intervenors; however, an intervenor cannot be so late as to prejudice the parties.[31] Timeliness analysis is not based on a straight forward bright-line rule but rather a contextual determination based on all the circumstances.[32] The Fifth Circuit has articulated four factors when analyzing timeliness: (1) how long the potential intervenor knew or reasonably should have known of her stake in the case into which she seeks to intervene; (2) the prejudice, if any, the existing parties may suffer because the potential intervenor failed to intervene when she knew or reasonably should have known of her stake in that case; (3) the prejudice, if any, the potential intervenor may suffer if the court does not let her intervene; and (4) any unusual circumstances that weigh in favor of or against a finding of timeliness.[33] These factors are a framework and "not a formula for determining timeliness."[34]

The facts and circumstances of this case weigh against intervention. Unless a new action or filing gives rise to a previously un-litigated interest, courts are generally suspect of motions to intervene after final judgment has been entered.[35] Parties expect to be able to move forward from an issue after a ruling on the merits or final disposition of the matter. Final judgment was entered

---

[31] *Glickman*, 256 F.3d at 375.

[32] *See id*.

[33] *Id.* at 376.

[34] *Id.*

[35] *See Blum v. Merrill Lynch Pierce Fenner & Smith Inc.,* 712 F.3d 1349, 1353–54 (9th Cir. 2013) (Allowing intervention by a party two years after the underlying litigation had been settled because KPMG's interest in the transcript did not arise until it was sued by Blum, and its motion to intervene was filed one day after Blum filed ex parte motions to reopen the federal action and enforce the terms of the protective order.); *See also Zbaraz v. Madigan*, 572 F.3d 370, 377 (7th Cir. 2009) (Denying intervention because the intervenors waited to file their motion to intervene until after the district court denied two motions to reconsider the ruling continuing the permanent injunction, and until after the defendants had filed their notice of appeal, and nearly twenty-five years after the initiation of the litigation.).

on March 18, 2020, and the Intervenor moved to intervene for the first time on March 14, 2023. A full three years had passed before the Intervenor filed.

These facts further imply that the Intervenor knew or reasonably should have known of its stake much earlier. The Intervenor asserted that it created a security interest in the Defendant's accounts receivable and other accounts on May 8, 2017, when it entered into the factoring agreement with Defendant.[36] Intervenor's professed ignorance of Plaintiff's first writ of garnishment is hardly convincing. Intervenor states that after Plaintiff's first writ of garnishment in 2020, the docket contained no record of service of a writ of garnishment on Simmons Bank.[37] Clearly, Intervenor had knowledge of this dispute as early as 2020 as it was aware of the docket entries. Why then did the Intervenor wait to file a motion to intervene until three years after final judgment and three writs of garnishment had already been granted?

Intervenor states that in April of 2022, Plaintiff, Defendant, and Intervenor entered into an agreement where Defendant would pay a portion of the funds in these accounts to Plaintiff in order to satisfy Plaintiff's judgment and enter a stipulation for dissolution of the writs of garnishment.[38] Defendant went out of business in early 2023 and ceased making payments to Plaintiff prompting Plaintiff to file new writs. Yet, this does not eliminate the fact that Plaintiff's first writ of garnishment affected Intervenor's property interest as much as the fourth. Therefore, the Intervenor's motion is not timely.

The other parties in this action would be prejudiced by granting intervention because they will continue to be involved in a suit that was concluded three years ago. Additionally, the

---

[36] "Motion (Second) for Leave to Intervene in Opposition to Plaintiff's Application for Writs of Garnishment and Request for Hearing" 1, ECF No. 58, filed May 8, 2023.

[37] *Id.* at 10.

[38] *Id.*

8

Intervenor suffers no prejudice by the denial of intervention because Plaintiff's latest applications for a writ of garnishment and execution were denied.[39]

### B. The Intervenor's Interest is Not Impaired or Impeded by a Writ of Garnishment

As to the third factor in a court's analysis of intervention as a right, an intervenor must show that disposition of the action may, as a practical matter, impair or impede their ability to protect that interest.[40] The Intervenor's legal interest is their priority security interest in Defendant's accounts. The Intervenor fears that granting Plaintiff's writ of garnishment will impede or interfere with their interest. However, Intervenor's fears are misplaced because the writs have been denied, and most importantly the law establishes Intervenor's priority.

In *Legacy Bank v. Fab Tech Drilling Equipment, Inc.*, a Texas secured transactions case, Legacy bank extended a revolving line of credit to Canyon in exchange for a security interest in Canyon's accounts receivable.[41] The security agreement was perfected by a UCC-1 financing statement that Legacy filed.[42] Fab Tech Drilling Equipment, Inc., ("Fab Tech") a trade creditor to Canyon, obtained a default judgment against Canyon in excess of one million dollars for unpaid services.[43] Fab Tech filed a writ of garnishment seeking to garnish accounts receivable owed to Canyon by garnishees.[44] Legacy intervened after learning of Fab Tech's writ of garnishment. The case mainly revolved around whether Legacy waived their security interests because it was

---

[39] *See* "Order Denying Writs of Garnishment and Execution" 1, ECF No. 60, filed June 2, 2023.

[40] *La Union Del Pueblo Entero*, 29 F.4th at 307.

[41] *Legacy Bank v. Fab Tech Drilling Equip., Inc.*, 566 S.W.3d 922, 924–25 (Tex. App.—Eastland 2018).

[42] *Id.*

[43] *Id.*

[44] *Id.*

undeniable Legacy had superior security interests to the accounts receivable over Fab Tech. The Texas Appellate Court stated the principle of garnishment writs in Texas. "Service of a writ of garnishment 'fixes a lien on the debtor's property or debts due him, 'subject to prior valid rights and liens against such property or debt.'"[45] A garnishor acquires no greater rights than the debtor had; therefore, a garnishor steps into the shoes of the debtor.[46] The Texas Court concluded that Fab Tech stepped into the shoes of Canyon following its writ of garnishment and was subject to Legacy's continued security interest in the accounts receivable.[47]

This case is strikingly similar to *Legacy Bank*. Like Fab Tech, Plaintiff obtained a default judgment in excess of one million dollars against Defendant and obtained writs of garnishment as to Defendant's accounts receivable. Like Legacy Bank, Intervenor has a perfected priority security interest in Defendant's accounts. Plaintiff can only step into the shoes of Defendant and is subject

---

[45] *Id.* at 930.

[46] *Id.*

[47] *Id.* at 931.

to the valid rights of the Intervenor. Thus, Intervenor's rights are not impaired or impeded with a potential granting of a fourth writ of garnishment.

The Intervenor is fully capable of hauling Plaintiff into court should Plaintiff take money from Defendant's accounts receivable that violate Intervenor's security rights. Such an action should take place in another suit, not this one.

## IV.   **CONCLUSION**

The Intervenor did not file a timely motion for intervention and a writ of garnishment will not impair or impede the Intervenor's security rights.

Accordingly, it is **HEREBY ORDERED** that Intervenor's "Motion (Second) For Leave to Intervene in Opposition to Plaintiff's Application for Writs of Garnishment and Request for Hearing" [ECF No. 58] is **DENIED**.

**SIGNED AND ENTERED** this **5th** day of **June 2023.**

_____
**FRANK MONTALVO**
**SENIOR UNITED STATES DISTRICT JUDGE**